IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUMMER R.,[1]

        Plaintiff,

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:21-cv-01569-HL

**OPINION AND ORDER**

_____

HALLMAN, United States Magistrate Judge:

     Plaintiff Summer R. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability

Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following

reasons, the Commissioner's decision is AFFIRMED.

_____

[1] In the interest of privacy, this Opinion uses only the first name and last initial for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on a combination of impairments, including degenerative disc disease of the lumbar spine, depression, and anxiety. Tr. 79.[2] At the time of her alleged

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 11).

onset date, she was 41 years old. Tr. 28. She has completed high school, and some college. Tr. 470. She has past relevant work experience as a compliance officer, cashier, credit clerk, and mortgage clerk. Tr. 28.

Plaintiff protectively applied for DIB on May 31, 2019, alleging an onset date of November 12, 2018. Tr. 204. Her application was denied initially on November 8, 2019, and on reconsideration on April 23, 2020. Tr. 113-17, 119-20. Plaintiff subsequently requested a hearing, which was held on April 2, 2021, before Administrative Law Judge ("ALJ") John Michaelsen. Tr. 35. Plaintiff appeared and testified at the telephonic hearing, represented by counsel. Tr. 35. A vocational expert ("VE"), Jeff Cockrum, also testified. Tr. 35. On April 20, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 10. Plaintiff requested Appeals Council review, which was denied on August 27, 2021. Tr. 1-3. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the

---

[3] The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636. (ECF 5).

Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. § 404.1520(e), 404.1545(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e)). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 404.1520(e) & (f) . If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

PAGE 4 – OPINION AND ORDER

III.    **The ALJ's Decision**

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after the alleged onset date. Tr. 15.

At step two, the ALJ determined that plaintiff has the following severe impairments: "obesity, degenerative disc disease, depression, and anxiety." Tr. 16.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. The ALJ then resolved that plaintiff had the residual function capacity ("RFC") to perform a range of light work that does not require more than frequent balancing, and no more than occasional kneeling, crouching, crawling, stooping, or climbing. The ALJ further found her limited to simple, repetitive, routine tasks. Tr. 19.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 28.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a production assembler, assembler of electrical accessories, and routing clerk. Tr. 29. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 30.

## DISCUSSION

Plaintiff argues that the ALJ committed four errors: (1) failing to give clear and convincing reasons to discount plaintiff's symptom testimony; (2) failing to support his analysis of medical opinions with substantial evidence; (3) failing to adequately consider the lay witness testimony under the Commissioner's revised regulations; and (4) finding at step five that a significant number of jobs exist in the national economy that plaintiff could perform. For the reasons discussed below, the Court affirms the ALJ's decision denying plaintiff's claim.

## I.    Symptom Testimony

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons to reject his symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Here, plaintiff testified regarding the severity of her back pain, which she alleged prevented her from returning to work. Tr. 44, 52-53. The ALJ found plaintiff's statements about the intensity, persistence and limiting effects of her symptoms inconsistent with the medical evidence and other evidence in the record. Tr. 21.

A.    *Conservative treatment and objective medical evidence*

The ALJ concluded that plaintiff's ability to manage her symptoms with conservative treatment undermined her testimony about the severity and frequency of her symptoms. Tr. 21-22. In some instances, use of conservative treatment such as over-the-counter medication is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). In *Parra*, the Ninth Circuit found the ALJ supported her decision with clear and convincing reasons because she pointed to "specific evidence in the record," such as lab tests, contradicting subjective pain testimony and a history of over-the-counter pain medication being used to treat the plaintiff's pain. *Id*. Here, although plaintiff reported that her back pain was disabling as of November 2018, she "elected to continue with conservative treatment" thereafter. Tr. 736, 838. She reported that she took oxycodone for flare-ups of her back pain, but only once or twice per month. Tr. 849.

Plaintiff's testimony of her pain symptoms at the hearing does not match up with her history of conservative treatment. Plaintiff told the ALJ, however, that she could not work because of repeated back pain flare-ups that made her miss many days every month. Tr. 50. Plaintiff further told the ALJ that chiropractic manipulation and acupuncture provided no relief whatsoever for her lower back, and only "some short[-]term relief for other areas of [her] back." Tr. 44. But the treatment record showed that such measures were far more effective than plaintiff suggested: Plaintiff told her chiropractor that her low back area felt "significantly better" since getting a chiropractic adjustment. Tr. 307. She specifically reported improvement to the low back

region. *See, e.g.,* tr. 314, 316, 317, 320. The adjustments continued, and plaintiff reported that

she "did well" with them. Tr. 309. By December 2018, plaintiff's neck pain was "greatly

improved," her mid-back pain showed "significant" improvement, and her low back pain had

improved as well. Tr. 318. Overall, plaintiff felt "pretty good." Tr. 318. In 2019, plaintiff

continued to respond "favorably" to her chiropractic treatment. *See, e.g.,* tr. 332-34, 831-33. The

ALJ weighed this evidence against plaintiff's hearing testimony about the severity of her back

pain, and reasonably found this objective medical evidence does not support the alleged severity

of her limitations.

Plaintiff argues that although the ALJ cited evidence that her back impairment had

stabilized, it did not discount her testimony about pain or lack of functioning. Pl. Br. at 13. In

particular, plaintiff argues that the record, including the MRI scans cited by the ALJ, shows that

although plaintiff's degenerative disc disease and foraminal stenosis are stable, they are

debilitating. Tr. 21. Plaintiff further argues that her treating doctor restricted her to part-time sub-

sedentary level work and her surgeon recommended spinal fusion in November, 2019. Tr. 912.

But these arguments go to the weight of the evidence, and the Court may not "reweigh the

evidence [and] substitute [its] own judgment" for the ALJ's. *Winans v. Bowen*, 853 F.2d 643,

644 (9th Cir. 1987) (internal quotation and citation omitted). Instead, the question is whether,

"considering the record as a whole, a reasonable person might accept [the evidence] as adequate

to support" the ALJ's conclusion that plaintiff's history of conservative treatment undermines his

credibility (i.e., whether it is supported by substantial evidence). *Thomas*, 278 F.3d at 954. The

record, including the collective whole of plaintiff's conservative treatment and successful

chiropractic care, satisfies this standard. This is a clear and convincing reason, supported by

substantial evidence, to uphold the ALJ's decision to discount plaintiff's subjective symptom testimony.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony. Even if other reasonable explanations of the subjective symptom testimony outside of the ALJ's conclusion exist, the ALJ's interpretation is supported by substantial evidence in the record.[4] When the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence, the Court should not relitigate it, even if other reasonable interpretations exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Because the ALJ supported his interpretation with substantial evidence, pointing to conflicts between plaintiff's testimony and medical records and other objective record evidence, the court will affirm the ALJ's decision to discount plaintiff's subjective symptom testimony.

## III.    Medical Opinion Evidence

### A.    Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new

---

[4] The parties address several other reasons articulated by the ALJ for discounting plaintiff's testimony. Because the Court has already found two clear and convincing reasons, supported by substantial evidence, these remaining reasons need not be addressed because any error (if any) as to these reasons, is harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless where "remaining reasoning and ultimate credibility determination [a]re adequately supported by substantial evidence in the record").

regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

B.    Dr. Patrick Spensley

Plaintiff first argues that the ALJ improperly discredited Dr. Patrick Spensley's opinions from June and August, 2020. The ALJ found that Dr. Spensley's opinions were unpersuasive because they were inconsistent with opinions of other providers and other objective medical evidence. Tr. 26. When comparing medical opinions, an ALJ's reason for rejecting a doctor's contradicted medical opinion need only be "specific and legitimate." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In June, and again in August, 2020, Dr. Spensley opined that plaintiff required temporary physical restrictions on work, and that she could not engage in any work on a full-time basis. Tr. 869, 903-04. The ALJ contrasted this conclusion with the reports of Thomas Davenport, M.D., and Susan Moner, M.D., from November 2019 and April 2020, respectively, which concluded that plaintiff could engage in light work with some additional restrictions on a full-time basis. Tr. 80-82, 96-98 The ALJ also compared Dr. Spensley's opinion to a series of evaluations by George Oji, M.D., who found as late as May, 2020, that despite plaintiff's reports of low back pain, she was consistently in no acute distress, with normal range of motion, normal muscle tone, normal coordination, and normal gait. *See, e.g.,* tr. 500, 919. The ALJ found Drs. Davenport, Moner, and Oji's opinions persuasive and supported by the medical evidence, citing numerous medical records that cataloged plaintiff's chronic, but pathologically stable back pain. Tr. 25-26. Plaintiff does not challenge the ALJ's decision to find these other three medical opinions persuasive. *See generally,* Pl. Br., ECF No. 13. The ALJ therefore reasonably relied on this evidence to find Dr. Spensley's opinions unpersuasive.

Additionally, the ALJ noted that the limitations Dr. Spensley imposed in his June and August, 2020 opinions were only temporary. Tr. 26. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 42 U.S.C. § 423(d)(1)(A) (requiring a

claimant's impairment to be expected to last for a continuous period of not less than twelve months); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Dr. Spensley's June, 2020 opinion covered just one month of work, Tr. 869, and in August he planned "to re-assess in thirty days." Tr. 904. Plaintiff invites the Court to link Dr. Spensley's mid-2020 opinions with an earlier January 2020 opinion, but the January opinion was different than the later two. *Compare* Tr. 727-28 (providing modest limitations on plaintiff's activity) *with* Tr. 869, 904 (recommending more severe physical limitations). And, even if the January 2020 opinion was of a piece with the June and August 2020 opinions, those recommendations would still not add up to a year. *See id.* Ultimately, the ALJ's finding that Dr. Spensley's opinions were temporary was another reasonable basis, supported by substantial evidence, on which to find his opinions unpersuasive.

### C.    Thuylan Huynh, LPC

Plaintiff also argues the ALJ erred by finding Counselor Thuylan Huynh, LPC's September 2019 letter in support of plaintiff's disability claim unpersuasive. Tr. 27-28, 834. Under the supportability factor, more weight is generally accorded to medical opinions that are supported by "relevant medical evidence" and the medical source's explanation. 20 C.F.R. § 404.1520(c)(1). The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Here, the ALJ found Counselor Huynh's letter "conclusory" and "overly vague due to its lack of specific functional limitations." Tr. 27; *see* 20 C.F.R. § 404.1520c(c)(1) (supportability is a key factor in assessing

persuasiveness). Counselor Huynh outlined plaintiff's diagnoses for anxiety and major depressive disorder and her associated symptoms. Tr. 834. Then Counselor Huynh concluded that plaintiff was "unable to successfully return to work as her [mental health] symptoms would significantly interfere with her job performance and may worsen her condition." Tr. 834. As the ALJ noted, Counselor Huynh did not explain this conclusion by reference to any objective evidence or specific functional limitations. Because this letter was unexplained and unsupported, the ALJ reasonably found it unpersuasive.

The ALJ's decision was further supported by substantial evidence because Counselor Huynh's letter was inconsistent with the opinions from several other medical sources, as well as the record. Tr. 27-28. Generally, medical opinions that are consistent with the record as a whole are accorded more weight than those that are not. 20 C.F.R. § 404.1527(c). Here, the ALJ reasonably found Dr. Huynh's opinion unpersuasive because it conflicted with other doctors' opinions that plaintiff could perform simple, repetitive work with limited social contact. Tr. 82-83, 98-99. Both Dr. Kessler and Dr. Nicoloff, for example, found plaintiff able to work with certain limitations, and supported their conclusions with mental status exams and plaintiff's activities of daily living. Tr. 26-27. The ALJ reasonably concluded that these opinions conflicted with Counselor Huynh's opinion that plaintiff could not engage in any work at all. Tr. 26-27. Moreover, plaintiff's activities, including providing personal and academic care for her developmentally disabled son (Tr. 46-47, 245), supported the ALJ's decision to find Dr. Huynh's opinion unpersuasive. Because the ALJ reasonably relied on this evidence to find Counselor Huynh's opinion unpersuasive, the decision was supported by substantial evidence.

## IV.    Lay Witness Testimony

Plaintiff further argues that the ALJ erred by rejecting the lay testimony of plaintiff's mother. On September 4, 2019, plaintiff's mother completed a third-party function report,

describing plaintiff's medical conditions, abilities, and daily activities. Tr. 269-77. Plaintiff's

mother reported that plaintiff cannot sit for more than about 15 minutes, cannot stand or walk for

more than 5 minutes, has constant pain and anxiety, has difficulty concentrating and

remembering, and is often irritable, emotional, overwhelmed, and fatigued. Tr. 269. The lay

testimony described that plaintiff needs help from her family to take care of the household

chores, sleeps poorly at night because of pain, and has difficulty reading and watching television

because of her poor concentration. Tr. 273. The witness checked lifting, squatting, bending,

standing, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration,

and getting along with others as abilities affected by plaintiff's conditions. Tr. 274. She noted

that plaintiff does not handle stress or changes in routine well. Plaintiff has side effects from her

medications, including drowsiness, dizziness, fatigue, and loss of balance. Tr. 275.

   Defendant argues the ALJ had no obligation to evaluate the lay witness testimony under

the revised 2017 regulations. But the relevant regulation provides: "[w]e are not required to

articulate how we considered evidence from nonmedical sources *using the requirements in*

*paragraphs (a)-(c) in this section*." 20 C.F.R. § 404.1520c(d) (emphasis added). To accept

Defendant's reading would render the highlighted part of the sentence superfluous. *See Jerri F.*

*v. Kijakazi*, 1:20-4037-RMG-SVH, 2021 WL 3362227, *14 (D.S.C. July 29, 2021) ("If ALJs

were no longer required to provide any articulation as to how they considered lay witness

statements, the additional language would be superfluous"), *report and recommendation*

*adopted*, CV 1:20-4037-RMG, 2021 WL 3396230 (D.S.C. Aug. 3, 2021). Thus, although the

regulations no longer require the application of the requirements (a)-(c), they "do not eliminate

the need for the ALJ to articulate analysis of lay-witness statements." *Jason R. v. Comm'r, Soc.*

*Sec. Admin.*, 6:20-CV-01981-MK, 2022 WL 981329, *9 (D. Or. Jan. 21, 2022), *report and recommendation adopted*, 6:20-CV-01981-MK, 2022 WL 980880 (D. Or. Mar. 31, 2022).

Although the ALJ did not expressly consider the lay witness testimony, it was harmless error to neglect it. The revised regulations state that the ALJ is "not required to articulate how he consider[s] evidence from nonmedical sources" using the same criteria for medical sources, 20 C.F.R. § 404.1520c(d); however, this "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." *Joseph M. R. v. Comm'r*, No. 3:18-CV-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019). When an ALJ's rationale for discounting a claimant's testimony applies equally to the nonmedical source statements, any error in failing to provide adequate reasons to reject the nonmedical source statements is harmless. *Molina*, 674 F.3d at 1117 (error in lack of reason to reject lay witness statements was harmless); *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid reasons to reject claimant's testimony also applied to the lay statements). Here, plaintiff's mother described symptoms that mirrored plaintiff's own allegations. As discussed above, the ALJ provided legally sufficient reasons for concluding that plaintiff's testimony was unpersuasive. Any error in rejecting the lay testimony was therefore harmless. *Molina*, 674 F.3d at 1117.

## V.      The ALJ's Step Five Determination

At step four, the ALJ determined that plaintiff could perform light work with additional restrictions, including that she was "limited to simple, repetitive, routine tasks." Tr. 19. Then, at step five, the ALJ relied on testimony from a qualified vocational expert to find that plaintiff could perform a significant number of jobs in the national economy. Tr. 29-30. The vocational

expert's testimony amounted to substantial evidence supporting the ALJ's determination that plaintiff was not disabled.

Plaintiff argues that her limitation to simple work (as opposed to detailed work) undermined the ALJ's step-five finding because the jobs on which the ALJ relied had a "Reasoning Level of 2." Pl. Brief, ECF No. 15 at 15-16. Plaintiff is incorrect. Level Two reasoning requires the claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App. C., § 3, 1991 WL 688702. An ability to complete "simple, detailed, non-complex task[s]" is consistent with Level Two. *Bowman v. Colvin,* 228 F. Supp. 3d 1121, 1141 (D. Or. 2017); *Rounds v. Comm'r*, 807 F.3d 996, 1004, n.6 (9th Cir. 2015) (recognizing in a footnote that unpublished circuit panel decisions had concluded that an RFC limitation to "'simple' or 'repetitive' tasks" is consistent with Level Two reasoning). Here, Dr. Nicoloff concluded that plaintiff could "recall very short, simple instructions" and could "complete simple, repetitive tasks." Tr. 98-99. The VE echoed this finding, that given the limitations reflected in the medical records and the RFC, plaintiff would be able to perform the requirements of representative occupations. Tr. 29. Accounting for these opinions, the ALJ found plaintiff was limited to "simple, repetitive, routine tasks." Tr. 19, 26. Accordingly, the ALJ found that plaintiff could perform several jobs at reasoning level two with this level of complexity. Tr. 29. Because there is no conflict between plaintiff's RFC and level 2 reasoning, substantial evidence supports the ALJ's decision.

Plaintiff further argues the ALJ erred because he failed to include a relevant limitation from Dr. Nicoloff's evaluation in hypotheticals posed to the VE, rendering the VE's testimony unreliable. Plaintiff relies on *Embrey v. Bowen*, where the Ninth Circuit found a VE's testimony

unreliable when hypotheticals posed to that VE had "no support in the record," and were flatly contradicted by the plaintiff's testimony and medical evidence. 849 F.2d 418, 423 (9th Cir. 1988). The ALJ did not make the same mistake here. Instead, he reasonably extrapolated an RFC from the medical evidence, as described above, and posed questions to the VE based on that RFC. Tr. 56-63. Failure to include the specific wording of a portion of a psychiatric doctor's diagnosis does not nullify the RFC or negate the questions posed to the VE. Because the ALJ posed questions to the VE based on record evidence and the RFC, which were not contradicted by the record, it was reasonable for the ALJ to rely on the VE's testimony, and the step five finding was supported by substantial evidence.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 22nd day of March, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge